# Applicability of Fourth Amendment to use of Electronic Beepers in Tracking Bank Robbery Bait Money

The warrantless monitoring by law enforcement personnel of electronic beepers hidden in bait money robbed from a bank probably does not constitute a "search" implicating the Fourth Amendment, even after the beeper being monitored has been taken into a home.

One who has come into possession of beeper-monitored bank bait money by robbing a bank has no legitimate expectation of privacy in such money that would be violated by the beeper monitoring.

Although this form of beeper monitoring probably does not constitute a search implicating the Fourth Amendment, it was recommended that the FBI should continue its practice of seeking a warrant when that form of monitoring is undertaken. However, because exigent circumstances justify the FBI's practice of commencing beeper monitoring immediately when a baited bank is robbed, the FBI is not constitutionally required to refrain from monitoring the beeper until it has obtained a warrant.

December 5, 1986

MEMORANDUM OPINION FOR THE ASSISTANT DIRECTOR, LEGAL COUNSEL, FEDERAL BUREAU OF INVESTIGATION

This memorandum responds to your request for an opinion on the legality of the warrantless monitoring of beepers hidden in bank robbery bait money. This Office has concluded that such monitoring probably does not constitute a "search," even after a beeper has been taken into a home. Nevertheless, we recognize that a court subsequently may disagree with this interpretation of the Fourth Amendment. We therefore recommend that the FBI continue its current practice of seeking a warrant in every case.[1]

Before proceeding further, it is important to emphasize the narrow scope of the constitutional issue presented. The installation of the beeper in the bait money clearly does not implicate the Fourth Amendment rights of the prospective bank robber. Only the bank has a legitimate privacy interest in the bait money, and its consent to the installation would preclude any objection it might make. *United States* v. *Karo*, 468 U.S. 705, 711 (1984).[2] Similarly, the transfer of the beeper to the bank robber does not infringe upon his legitimate expecta-

---

[1] This Office has been advised that the FBI's general practice. upon being informed of a bank robbery in which a beeper was taken, is to seek a warrant as soon as it is reasonably practicable to do so.

[2] We assume that the installation occurs at the direction or suggestion or with the cooperation of government agents. Otherwise, of course, the Fourth Amendment would not apply because the Fourth Amendment does not govern private searches. *United States* v. *Jacobsen*, 466 U.S. 109, 113 (1984).

tion of privacy. *Id.* at 712.[3] Finally, even when government agents do begin monitoring a beeper that has been taken from a bank, there is no "search" if the information revealed could have been obtained through visual surveillance. *See United States* v. *Knotts,* 460 U.S. 276 (1983). Thus, the only time that the Fourth Amendment *might* be implicated by the monitoring of a beeper in bait money is when the beeper is taken into a place that could not be entered physically without a warrant.

In *Karo,* the Supreme Court held that using a beeper to locate a can of ether inside a house constituted a "search" because it "reveal[ed] a critical fact about the interior of the premises that the Government was extremely interested in knowing and that it could not have otherwise obtained without a warrant." 468 U.S. at 715. The Court analogized the electronic surveillance to a physical entry of the home:

> [H]ad a DEA agent thought it useful to enter the Taos residence to verify that the ether was actually in the house and had he done so surreptitiously and without a warrant, there is little doubt that he would have engaged in an unreasonable search within the meaning of the Fourth Amendment. For purposes of the Amendment, the result is the same where, without a warrant, the Government surreptitiously employs an electronic device to obtain information that it could not have obtained by observation from outside the curtilage of the house.

*Id.* If the Supreme Court were to carry this analogy to its logical extreme, of course, monitoring any beeper that has been taken into a residence would constitute a "search." Fortunately, there is reason to believe that the Supreme Court might not rely upon this analogy in the present situation. The *Karo* Court acknowledged that monitoring an electronic device in a home is "less intrusive than a full scale search." 468 U.S. at 715. More importantly, the Court suggested that a warrant to monitor a home electronically might be issued on the basis of "reasonable suspicion." *Id.* at 718–19 n.5.[4] This shows the imperfection of the Court's analogy, for if the Court had intended to equate the monitoring of a beeper in a private residence with the physical entry of the home, there would have been no justification for suggesting that a warrant might be issued to authorize the former in the absence of "probable cause."

*Karo* is best understood as holding simply that the electronic surveillance at issue there infringed upon "an expectation of privacy that society is prepared to

---

[3] In *Karo,* 468 U.S. at 712, the Court explained:

The mere transfer to Karo of a can containing an unmonitored beeper infringed no privacy interest. It conveyed no information that Karo wished to keep private, for it conveyed no information at all. To be sure, it created a potential for an invasion of privacy, but we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment.

[4] In *Karo,* it was unnecessary for the Court to decide what level of suspicion would justify the issuance of a warrant to monitor a beeper in a home. The Court said that there would be "time enough to resolve the probable cause/reasonable suspicion issue in a case that requires it." 468 U.S. at 718–19 n.5.

accept as reasonable." *United States* v. *Jacobsen*, 466 U.S. 109, 122 (1984). The can of ether to which the beeper was attached was not contraband, and it had been lawfully acquired. Thus, the respondent in *Karo* had a legitimate expectation of privacy in the fact that he possessed this item in his home. If the Court had reached a different conclusion, it would be constitutional for a government agent to attach a beeper to any item and to monitor it wherever it was taken.

This reasoning does not apply to a bank robber's possession of bank bait money. Unlike a person who has lawfully acquired a non-contraband item, a bank robber does not have a legitimate expectation that a beeper in a bait pack will not be monitored in his home. A "legitimate" expectation of privacy "must have a source outside of the Fourth Amendment, either by reference to real or personal property law or to understandings that are recognized and permitted by society." *Rakas* v. *Illinois*, 439 U.S. 128, 143–44 n.12 (1978). The beeper, of course, is attached to bait money that has been stolen from a bank. Neither property law nor any other "understanding" recognized by society protects an expectation of privacy relating to the location of such stolen money. Admittedly, it may be reasonable for the bank robber to assume that government authorities are not monitoring the location of a recently stolen bait pack, in much the same way that "a burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy." *United States* v. *Jacobsen*, 466 U.S. at 122–23 n.22. The Supreme Court has long recognized, however, that "the concept of an interest in privacy that society is prepared to recognize as reasonable is . . . critically different from the mere expectation . . . that certain facts will not come to the attention of authorities." *Id.* at 122.[5]

The Supreme Court's decision in *United States* v. *Jacobsen*, *supra*, bolsters the argument that monitoring a beeper attached to bank robbery bait money, even after the beeper is taken into a home, does not implicate the Fourth Amendment. In *Jacobsen*, the Court held that testing a white powder to determine whether it was cocaine did not constitute a search. Critical to the Court's decision was the fact that "[t]he field test at issue could disclose only one fact previously unknown to the agent — whether or not a suspicious white powder was cocaine." 466 U.S. at 122.[6] Because Congress had decided to "treat the interest in 'privately' possessing cocaine as illegitimate," *id.* at 123,

---

[5] In a number of cases antedating *United States* v. *Karo*, *supra*, courts found that monitoring beepers placed in stolen property and contraband did not constitute a "search" within the meaning of the Fourth Amendment. *See, e.g., United States* v. *Bailey*, 628 F.2d 938, 944 (6th Cir. 1980) ("For Fourth Amendment purposes, there is a clear distinction between contraband and other property."); *United States* v. *Moore*, 562 F.2d 106, 111 (1st Cir. 1977) ("We and other courts have upheld the placing of beepers, without warrant, in contraband, stolen goods, and the like on the theory that the possessors of such articles have no legitimate expectation of privacy in substances which they have no right to possess at all."); *United States* v. *Perez*, 526 F.2d 859, 863 (5th Cir. 1976) ("a person who accepts an item of personal property in exchange for heroin has no reasonable expectation that it is cleansed of any device designed to uncover the tainted transaction or identify the parties").

[6] The Court pointed out that the field test could not even tell the government agent whether the substance was sugar or talcum powder. 466 U.S. at 109.

governmental conduct revealing only whether a substance was cocaine, and no other arguably "private" fact, compromised no legitimate privacy interest. *Jacobsen* suggests that monitoring a beeper placed in bank robbery bait money does not constitute a "search." Possession of money stolen from a bank, like possession of cocaine, has been made illegal, and therefore a bank robber's expectation of privacy relating solely to the location of this stolen money is illegitimate.

The Supreme Court's decision in *United States* v. *Place*, 462 U.S. 696 (1983), likewise suggests that the Constitution does not prohibit the warrant-less monitoring of a beeper in a bait pack, even after it is taken into a home. In *Place*, the Court held that having a specially trained dog sniff personal luggage in order to determine whether it contains contraband does not constitute a "search." *Id.* at 707. There were twin rationales for the Court's decision. First, the canine sniff reveals only one thing about the contents of the suitcase, the presence or absence of contraband. Second, the limited nature of the search insures that the owner of the suitcase is not "subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods," such as having an officer "rummage through the contents of the luggage." *Id.* These two rationales imply that monitoring a beeper that has been taken into a home does not constitute a "search." Such monitoring reveals only one thing, the presence or absence of an item that is possessed illegally. Furthermore, like the owner of the suitcase in *Place*, the person from whose home the radio signals are emanating is not subjected to the embarrassment of more intrusive investigative methods, such as the physical entry of his residence.

Although this Office believes that monitoring a beeper that has been placed in bait money probably does not constitute a "search," we recommend that the FBI continue its current practice of seeking a warrant in every case. See *supra* note 1. This does not mean that the FBI should refrain from monitoring a beeper until it has obtained a warrant. When a bank is robbed, exigent circumstances justify the FBI's current practice of beginning immediately to monitor a beeper, even before a warrant is secured.[7] But while one or more agents are monitoring the beeper, another agent should be seeking a warrant as soon as it is reasonably practicable to do so.[8] This course of action will avoid the

---

[7] If the FBI were to locate a bait pack in a specific residence before it had been able to obtain a warrant, we feel certain that a court would hold that this "search," if it is indeed a "search," was justified by exigent circumstances. The warrantless entry of a home is justified if there is reason to believe that evidence will be destroyed or removed before a warrant can be secured. *See, e.g*, *United States* v. *Edwards*, 602 F.2d 458 (1st Cir. 1979); *United States* v *Rubin*, 474 F.2d 262 (3d Cir. 1973). Although the resolution of this issue depends upon varying factual circumstances, in most cases it will be reasonable for FBI agents to assume that if they do not locate the beeper immediately, it will be removed or destroyed. Moreover, it is important to remember that the "exigent circumstances" exception to the warrant requirement justifies the physical entry of a home. This Office believes that a court would be even more willing to find that exigent circumstances justify the "electronic entry" of a home without a warrant.

[8] The warrant issued need not describe the "place" to be searched. As the Supreme Court recognized in *United States* v. *Karo*, 468 U.S. at 719, "the location of the place is precisely what is sought to be discovered"

Continued

141

unnecessary suppression of important evidence if a court subsequently disagrees with our constitutional analysis. We are confident that in the foreseeable future the issue will be resolved in litigation.

SAMUEL A. ALITO, JR.
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8] (. . . continued)
through the monitoring of the beeper. Therefore, an agent applying for a warrant in such a case simply should describe the circumstances under which the bait pack was taken and the length of time for which beeper surveillance is requested. *See id.*

142